SAUNDERS, Judge,
concurring in part; dissenting in part.
The plaintiff, Wayne Moses, was the general overseer of a nursery owned by defendant, Harold Muse, under an oral agreement that the plaintiff would be paid 30% of all sales. Both parties agree that this was agreed upon and that the plaintiff was, in fact, paid 30% of all sales during the 5 years that he worked for the defendant. In 1991, Muse offered plaintiff a reduced salary of 20% of the sales, or a weekly salary of $200.00 plus 5% of the sales. Moses declined this offer and quit his job. This suit followed.
The plaintiff is of the opinion that the agreement would allow him to receive 30% of the value of unsold nursery plants at the time of his termination and the defendant is of the opinion that no such agreement was made. It is clear from the record that the parties did not have a meeting of the minds as to what, if anything, the plaintiff would be entitled to at the time of his termination.
The record is clear that at the time that the plaintiff was first employed by the defendant, there was growing stock and that plain *1134 tiff did receive commissions based upon the stock that was growing at the time he was first employed. While the trial judge did not allow evidence as to the value of the nursery stock at the time of the plaintiffs termination, the plaintiff is adamant that the value of this stock was substantially greater than at the time that he was originally employed.
The majority feels, as did the trial judge, that the commissions being paid on the crops throughout the period of employment were tantamount to wages for the plaintiffs labor and that he acquired no vested interest in the nursery products which he had produced during his years of employment and which remained in the defendant’s possession at the time of the plaintiffs termination. I cannot completely agree with this analysis. Certainly, if the amount of produce on hand at the time of the plaintiffs termination is comparable to the amount at the time he was first employed, then the analysis would be sound and the plaintiff would have nothing to complain about. However, if through the plaintiffs labor and industry, he was successful in increasing the nursery stock, then it would be inequitable and a violation of the principle of unjust enrichment to allow the defendant to unilaterally reduce his commission on the increased stock which he produced through his diligence and labor. Equity would mandate that plaintiff be allowed an award based upon principles of quantum meruit on the increase in the defendant’s unsold stock which the plaintiff produced. This equitable interest would not be 30% as suggested by the plaintiff as the evidence suggests that the crop is never sold within a period of one year; that there are slow seasons and peak seasons in the nursery business; and that the plaintiff was required to perform labor during the entire period that the crop was being sold. Thus, the determination of an equitable interest of the plaintiff in the increased stock would have to take into account the labor which he would have been required to perform during the period of time that the crops were being marketed.
A review of the pleadings shows us clearly that the plaintiff did not plead a theory of unjust enrichment or quantum meruit, although he comes close thereto in that he does suggest that he worked very hard and that his work improved and that in 1991, he “produced an even bigger crop.” The same review reveals that the defendant was diligent in objecting to any evidence that would allow an enlargement of the pleadings and, in fact, the pleadings were not enlarged.
Accordingly, I agree with the majority’s conclusion upon the pleadings and evidence presented, but I feel that justice would best be served by remanding the case with instructions to allow the plaintiff to amend his pleadings to allege, if he is able to, facts which might form the basis of a claim in quantum meruit and/or unjust enrichment.